IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:19-cr-00021-GTS |
| | ) | |
| **v.** | ) | |
| | ) | |
| **STEPHEN J. TAUBERT** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## UNITED STATES' TRIAL MEMORANDUM

## I.    STATEMENT OF THE CASE

A.    Jury selection is scheduled to commence at the discretion of United States District Judge Glenn T. Suddaby on March 18, 2019, in Syracuse, New York.

B.    The defendant is in federal custody.

C.    Jury trial has not been waived.

D.    The estimated duration of trial is approximately 2-3 days.

E.    The Indictment charges the defendant with three counts:   (i) one count of influencing, impeding, or retaliating against a federal official, in violation of 18 U.S.C. § 115; (ii) one count of making a threat in interstate communication, in violation of 18 U.S.C. § 875; and (iii) one count of making a threat against a former President of the United States, in violation of 18 U.S.C. § 879.

F.    Expert witnesses:   The government does not anticipate expert testimony.

G.    Other potential witnesses:

At this time, the government anticipates calling the following witnesses:

1.    Gerren Stith, U.S. Capitol Police (Washington, D.C.):   Expected to testify concerning his

investigation of threats made by the defendant against Congresswoman Maxine Waters in 2018, including an interview of the defendant and statements made by the defendant, including additional threatening comments made by the defendant; and his reaction(s) to and/or perception(s) regarding the additional threatening comments made by the defendant.

2.     Lawrence Anyaso, U.S. Capitol Police (Washington, D.C.): Expected to testify concerning his investigation of threats made by the defendant against Congresswoman Maxine Waters in 2018, including an interview of the defendant and statements made by the defendant, including additional threatening comments made by the defendant; and his reaction(s) to and/or perception(s) regarding the additional threatening comments made by the defendant.

3.     Tiayana Walker, Office of Congresswoman Maxine Waters (Los Angeles, CA): Expected to testify concerning her telephone conversation with the defendant in 2018, during which the defendant made threats regarding Congresswoman Maxine Waters and her staff; her reaction(s) to and/or perception(s) regarding the threats made by the defendant; and Maxine Waters' status as an elected official in Congress at the time the threats were made.

4.     Timothy Martins, Syracuse Police Department (Syracuse, NY): Expected to testify concerning his interactions with the defendant in connection with the investigation of the defendant's threats against Maxine Waters in 2018, including statements made by the defendant.

5.     Jacob Breen, Syracuse Police Department (Syracuse, NY): Expected to testify concerning his interactions with the defendant in connection with the investigation of the defendant's threats against Maxine Waters in 2018, including statements made by the defendant.

6.     Christopher Secondo, Department of Homeland Security, U.S. Secret Service (Syracuse, NY): Expected to testify concerning his investigation of threats made by the defendant against

1

Barack Obama in 2017, including an interview of the defendant and statements made by the defendant; and Barack Obama's status as a former president of the United States at the time the threats were made.

7.     Vernida Long, U.S. Capitol Police (Washington, D.C.): Expected to testify concerning telephone and address records searches she made in connection with threats made by the defendant against Barack Obama in 2017 and the results of those searches in relation to the investigation of the threats.

8.     Fred Lamberton, Syracuse Police Department (Syracuse, NY): Expected to testify concerning his interactions with the defendant in connection with the investigation of the defendant's threats against Barack Obama in 2017, including statements made by the defendant.

9.     Chuck Broddus, Syracuse Police Department (Syracuse, NY): Expected to testify concerning his interactions with the defendant in connection with the investigation of the defendant's threats against Barack Obama in 2017, including statements made by the defendant.

10.     Erin Kurvers, Office of Senator Tina Smith (Washington, D.C.): Expected to testify concerning telephone conversations with the defendant she had in 2017 while working for Senator Al Franken during which the defendant made threats against Barack Obama; her reaction(s) to and/or perception(s) regarding the threats made by the defendant; other phone calls placed by the defendant to former Senator Franken's office the same day; and contemporaneous information she wrote down regarding the defendant's statements that constitute non-hearsay admissible evidence and/or past recollections recorded.

11.     Alex Davis, Office of Senator Tina Smith (Washington, D.C.): Expected to testify concerning a telephone conversation with the defendant he had in 2017 while working for Senator

Al Franken during which the defendant made threats against Barack Obama; and his reaction(s) to and/or perception(s) regarding the threats made by the defendant.

During the course of preparing for trial, the government may come across other potential witnesses and will update its witness list accordingly.

## II.     STATEMENT OF FACTS

### A.  The Defendant's Threat Against Former President Obama

On or about June 2, 2017, the defendant (claiming to be a man named Joe Peterson) made multiple phone calls to the main telephone line for the offices of then Senator Al Franken.   A staffer named Erin Kurvers took two of those phone calls and heard the defendant make a number of threatening statements regarding former President Obama.   Kurvers memorialized the defendant's threatening statements first in handwritten notes as the statements were being made and then in an email she sent to Capitol Police.   She quoted the defendant as saying "I'm going to go Washington and hang the f***ing n****r," "he deserves to be killed," that "n****r gay boy is going to be killed, I guarantee it," "I'm going to Washington DC this Saturday tomorrow you can be there at his mansion I'm going to go hang him and his f***ing a** hole n****r."

The caller-ID system at Senator Franken's office identified the incoming phone number as 315-478-xxxx and the name as "Norma XXXXXXXX."[1]   Investigation associated that telephone number with the defendant, who lives with Ms. XXXXXXX.   The defendant was interviewed on June 9, 2017 by Special Agent Christopher Secondo and two members of the Syracuse Police Department concerning the threats.   The defendant initially denied making calls to then Senator

---

[1]  The Senator's caller ID system displayed a full telephone number and name.   Both are partially redacted here for privacy reasons.

Al Franken's office but then admitted that he called the former Senator's office because he was upset about actress Kathy Griffin's video in which she appeared to be holding a severed head of President Donald Trump.   The defendant also admitted making threats toward former President Obama, and the defendant apologized.   The defendant said that he often says things to get a reaction if he thinks the person is not listening or will not otherwise respond to him.   The defendant called himself a patriot and accused former President Obama of supporting the radical Islamic ideology of wiping out the West.   The defendant said that he was just a "cranky old man with a lot of time on his hands and too much television."   He said that he would clean up his verbal outbursts and that the Secret Service would not have to come find him again.

### B.  The Defendant's Threat Against Congresswoman Waters

On or about July 20, 2018, the defendant called the California office of Congresswoman Maxine Waters.   As memorialized minutes later by the staffer who took the telephone call (Tia Walker), the defendant was irate and called Ms. Walker a "stupid f***ing n****r b**ch."   The defendant then said "I'm gonna be at every event that stupid f***ing n****r b**ch is at and I'm gonna kill that f***ing b**ch and all you stupid f***ing n****rs that work for her.   You are all just dumb n****rs and I will kill you all."   Ms. Walker asked the defendant if he was issuing a death threat against the Congresswoman.   The defendant said yes.   Ms. Walker told the defendant that she was going to contact Capitol Police, and the defendant said "good."   Congresswoman Waters's caller ID system identified the caller as "Stephen Tauber" (the last letter was cut off) and the telephone number as 315-478-xxxx (the same number used to call then Senator Al Franken's

office).[2]

Capitol Police Special Agent Gerren Stith (along with Capitol Police Special Agent Lawrence Anyaso and Syracuse Police Detectives Martins and Breen) interviewed the defendant on August 9, 2018, at his home in Syracuse, New York.   The interview was audio-recorded.   In sum, the defendant admitted during the early part of the interview to wanting to "terrorize" the Congresswoman and to making a threat against her – "Okay then I threatened her, Okay."   In the same interview, the defendant then proceeded to deny making the threat and persisted in that denial.   Instead, he claimed that he only called the Congresswoman's office to tell her that she was a "low-IQ n****r."   During the course of the interview the defendant made contradictory statements and false denials, including claiming that he had never been interviewed by law enforcement concerning prior threats and that he did not have a telephone (after admitting first that he threatened Congresswoman Waters and second that he called only to use a racial slur).   The audio recording of the interview reflects that the investigators dialed the telephone number associated with the threat, and the telephone can be heard ringing in the background before being picked up by Ms. XXXXXX.[3]

## III.   STATEMENT OF THE LAW

### Threatening a Federal Official – 18 U.S.C. § 115

Count 1 of the indictment charges the defendant with influencing, impeding or retaliating against a federal official in violation of 18 U.S.C. § 115(a)(1)(B).   That statute provides that:

> Whoever threatens to assault, kidnap, or murder, a United States
> official . . . with intent to impede, intimidate, or interfere with such

---

[2] The Congresswoman's caller ID system displayed a full number.   It is partially redacted here for privacy reasons.

[3] The same woman identified above through former Senator Franken's caller ID system.

> official . . . while engaged in the performance of official duties, or
> with intent to retaliate against such official . . . on account of the
> performance of official duties [shall be guilty of a crime].

*Id.*

To establish a violation of 18 U.S.C. § 115(a)(1)(B) the government must prove the following elements beyond a reasonable doubt:

1. That the defendant threatened to assault, kidnap or murder Congresswoman Waters;

2. That at the time of the alleged threat, Congresswoman Waters was a federal official; and

3. That, the defendant acted with the intent to impede, intimidate, or interfere with that official while he or she was engaged in the performance of his or her official duties or with the intent to retaliate against that official on account of the performance of his or official duties.

*United States v. Turner*, 720 F.3d 411, 426 (2d Cir. 2013).

With respect to the first element of the offense, courts have generally held that the test for determining whether a threat is a "true threat" is partly objective and partly subjective.   First, the statement must have been made under circumstances that a reasonable person who heard it would understand it as a serious expression of an intent to inflict bodily injury, and the defendant must have made the statement intending it to be a threat or with knowledge that the statement would be viewed as a threat.   *See Elonis v. United States*, 135 S. Ct. 2001 (2014); *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011); *United States v. Heineman*, 767 F.3d 970 (10th Cir. 2014); *Turner*, 720 F.3d at 420 n. 4.   However, the government need not prove that the defendant intended to carry out the threat or that he even had the ability to carry out the threat.

The second element of the offense requires the government to prove that the target of the threat was a "United States official."   Title 18, United States Code, Section 115(c)(4) defines "United States official" to include "a Member of Congress."   Here, the government expects it will be undisputed that Congresswoman Waters qualifies as a "United States official" and that she held that position at the time of the offense.

The third element requires the government to prove that the defendant acted with the intent to impede, intimidate, or interfere with the victim's performance of her official duties or with the intent to retaliate against the victim because of the performance of her official duties.   *See United States v. Stefanik*, 674 F.3d 71 (1st Cir. 2012); *United States v. Wynn*, 827 F.3d 778 (8th Cir. 2016). The defendant admitted when interviewed by Capitol Police that he wanted to "terrorize" Congresswoman Waters and that he was angry about comments she made concerning President Trump's Press Secretary.   Further, the defendant's threat included a statement that he would be at "every event" that the Congresswoman attended, further reflecting the defendant's intention to impede her performance of official duties through intimidation.

**Threat in Interstate Communication – 18 U.S.C. § 875**

Count 2 of the indictment charges the defendant with making a threat in interstate communication, in violation of 18 U.S.C. § 875(c).   That statute provides that:   "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be [guilty of a crime]."

To establish a violation of 18 U.S.C. § 875(c), the government must prove the following elements beyond a reasonable doubt:

1.  That the defendant threatened to kidnap or injure Congresswoman Waters and/or her

staff, as charged in the indictment;

2. That the threat was communicated in interstate commerce; and

3. That the defendant transmitted the threat knowingly and intentionally.

*See United States v. Francis*, 164 F.3d 120 (2d Cir. 1999).

The requirements for the government to prove the first element of § 875(c) are substantially the same as the requirements for the government to prove the first element of the 18 U.S.C. § 115 charge, and the government's evidence is also virtually the same.  With respect to the second element – that the threat was communicated in interstate commerce – it is sufficient for the government to prove that the defendant made a communication between two States.  *See generally United States v. Elonis*, 730 F.3d 321 (3d Cir. 2013), *rev'd on other grounds by Elonis*, 135 S. Ct. 2001 (2015); *Bagdasarian*, 652 F.3d at 1113; *Heineman*, 767 F.3d at 970; *United States v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007); *United States v. Oxedine*, 531 F.2d 957 (9th Cir. 1976); *United States v. Kammersell*, 196 F.3d 1137, 1140 (10th Cir. 1999).   The government expects it to be undisputed that the defendant made a telephone call from New York to California, satisfying this element.

The final element of this offense requires the government to prove that the defendant intended to transmit a threat and intended that the victim receive the communication as a threat. The government is not required to prove that the defendant intended to carry out the threat; that the defendant had the ability to carry it out; that the threat was communicated directly to the target; or that the threat was made to achieve any particular purpose.   *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001); *United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir. 1979); *United States v. Chatman*, 584 F.2d 1358, 1361 (4th Cir. 1978); *United States v. Jongewaard*, 567 F.3d 336,

8

339-41 (8th Cir. 2009).

**Threat Against Former President of the United States – 18 U.S.C. § 879**

Count 3 of the indictment charges the defendant with threatening a former President of the United States, in violation of 18 U.S.C. § 879.   That statute provides in pertinent part as follows: "Whoever knowingly and willfully threatens to kill, kidnap or inflict bodily harm upon – a former President . . . [is guilty of a crime]."

To prove a violation of 18 U.S.C. § 879, the government must prove beyond a reasonable doubt that:

1. The defendant said the words alleged in the indictment to be a threat to kill, to kidnap, or to inflict bodily harm upon a former President of the United States;

2. The words were in fact a threat; and

3. The defendant made the threat knowingly and willfully.

*See also, Bagdasarian*, 652 F.3d at 1118.

The first element requires the government to prove that the defendant is the person who made the threat.   The second element – that the words were a threat – requires the government to make essentially the same showing as is required in connection with Counts 1 and 2, as discussed above.   Likewise, the third element of this offense is essentially the same as the third element of the § 875(c) offense (*i.e.*, that the defendant intended to transmit a threat intending that the victim receive the communication as a threat).

**Application of United States Sentencing Guideline § 3A1.1(a) – Hate Crime Motivation**

United States Sentencing Guideline § 3A1.1(a) provides in pertinent part:    "If the finder of fact at trial . . . determines beyond a reasonable doubt that the defendant intentionally selected

any victim . . . as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person, increase by 3 levels." The government requests that the jury be provided with a special verdict form that prompts the jury to make a § 3A1.1(a) determination for any Count for which it finds the defendant guilty. The races of the targets of the threats, the defendant's use of racial slurs in communicating the threats, and the defendant's use of similar language along with other statements reflecting racial bias support charging the jury on a hate crime motivation for the offenses and providing the jury with a special verdict form.

The government's proposed jury instruction regarding U.S.S.G. § 3A1.1(a) uses the model instruction that applies for offenses under 18 U.S.C. § 249(a)(1) (hate crime acts). This is because the language in U.S.S.G. § 3A1.1(a) tracks the statutory language in § 249(a)(1) (*i.e.*, section 249(a)(1) applies where a defendant causes bodily injury to any person . . . "because of the actual or perceived race, color, religion, or national origin of any person . . . ."). *See Burrage v. United States*, 134 S. Ct. 881 (2014); *United States v. Miller*, 767 F.3d 585, 591-93 (6th Cir. 2014); *see also United States v. Smith*, 365 F. App'x 781, 788 (9th Cir. 2010) (summary order).

## IV.  EVIDENTIARY ISSUES

### A.  Statements by the Defendant

Federal Rule of Evidence 801(d)(2)(A) provides that an opposing party's statement is not hearsay if offered against the party and the statement was made by the party in an individual or representative capacity. Here, the defendant made statements when he made the threatening telephone calls and later when he was interviewed by Secret Service and Capitol Police. The government will call witnesses to testify about the defendant's threatening statements and later

10

admissions concerning both threats, and the government intends to play a portion of the audio recording of the interview by Capitol Police concerning the defendant's threats against Congresswoman Waters and her staff.

The defendant used the racial slurs and expletives in his threats and when interviewed by law enforcement about them.   The defendant's statements, including the audio recording of the defendant's interview, should be admitted into evidence (with a transcript that will partially redact the slurs and expletives) because they are non-hearsay statements of a party opponent and provide evidence of the defendant's identity as the caller for each threat as well as his intent and motive in making the threats.   *See United States v. Rachell*, 2014 WL 2800765, at *4 (D. Mont. June 19, 2014) (denying defense motion *in limine* to exclude evidence of the defendant's use of racial slurs and epithets in connection with a threat against President Obama because the defendant's "use of racial slurs and epithets is relevant to Defendant's intent with respect to his statements, and is relevant to the inquiry of whether a reasonable person would foresee that the statements would be perceived as a true threat.   Racial slurs are often described as a form of 'hate speech.'   As such, the fact that Defendant used them is relevant to the intensity of Defendant's response to and perception of the President and the likelihood that threats against the President were serious threats rather than idle talk."); *United States v. Orenuga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) (fact that the defendant's incriminating statements also expressed racial, ethnic or religious bias did not unfairly prejudice the defendant because the comments were highly relevant to his participation in the scheme).

The government does not intend to play certain segments of the recorded interview with the defendant that might be unduly prejudicial when weighed against relevance, as set forth

below:[4]

(i)     Questions and answers concerning threats that the defendant made against the NAACP in 2013, Quicken Loans Arena in 2017, and former Syracuse Mayor Stephanie Minor in 2017.   The government intends to leave in portions of the interview where the defendant is asked if he had ever threatened <u>any</u> other government officials (other than Congresswoman Waters) because the government's proof in this case concerns one such threat (*i.e.*, the threat against former President Obama), and his false denial is otherwise relevant because it shows consciousness of guilt and evasion;

(ii)    Questions and answers concerning the defendant's mental and physical health and his treatment by healthcare professionals;

(iii)   Questions and answers concerning the defendant's use of drugs and/or alcohol;

(iv)    Questions and answers about the defendant's criminal history;

(v)     An exchange between the defendant and a Syracuse Police Detective at the end of the interview that the government believes is both irrelevant and potentially prejudicial to the defendant.

**B.      Transcript of Recorded Interview of the Defendant**

As mentioned above, Capitol Police audio recorded its interview of the defendant on July 20, 2018, concerning the defendant's threat against Congresswoman Waters and her staff.   The audio recording is admissible evidence, even if portions of the recording are unintelligible. *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir. 1973); *United States v. Weiser*, 428 F.2d 932,

---

[4]  The government's specific proposed redactions were shared with the defense on March 1, 2019.

936-37 (2d Cir. 1969).[5]   Further, the government should be permitted to scroll a transcript of the audio recording while the recording is playing as an aid for the jury.   The use of transcripts has been specifically approved by the Second Circuit, and courts have recognized that transcripts help the jury identify who is speaking.   *See United States v. Carson*, 464 F.2d 424, 436-37 (2d Cir. 1972); *United States v. Chiarizio*, 525 F.2d 289, 293-94 (2d Cir. 1975); *United States v. Slade*, 627 F.2d 293, 302-03 (D.C. Cir. 1980); *United States v. Koska*, 443 F.2d 1167, 1169 (2d Cir. 1971) (per curiam).   If the jury so requests, it also is within the discretion of the trial judge to permit the jury to rehear the audio recording and to utilize the transcript both while the recording is being replayed and during the jury's deliberations.   *See United States v. Cioffi*, 493 F.2d 1111, 1116-17 (2d Cir. 1974); *Carson*, 464 F.2d at 437; *Koska*, 443 F.2d at 1169; *cf. United States v. Alfonso*, 552 F.2d 605, 618-20 (5th Cir. 1977).   The transcript of the audio recording reflects the defendant's use of racial slurs and curses as the following partially redacted terms:   "n****r," "f***ing," "a** hole," "b**ch," and "s**t."

C.   **Staffer's Email Communications Memorializing the Defendant's Threats**

The staffers who received the defendant's threatening telephone calls at then Senator Al Franken's office and Congresswoman Maxine Waters' office will be witnesses at trial.   The government expects each to testify regarding the content of the defendant's statements to them. As set forth above, the defendant's statements are admissible non-hearsay.

Each staffer also memorialized the defendant's threats, including by quoting the defendant, in emails sent to the Capitol Police.   The government will seek to introduce the email communications to Capitol Police as present sense impressions and/or excited utterances under

---

[5]  A very small percentage of the audio recording is unintelligible.

Federal Rule of Evidence 803(1) and (2).

Federal Rule of Evidence 803(1) and (2) provide respectively that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" and "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" are "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness."   Statements are often analyzed for admissibility under both provisions because they often apply in similar circumstances.

Here, the staff members memorialized what the defendant said shortly after the defendant made the statements, and the government expects each staff member will testify that she was still under a state of excitement caused by the defendant's conduct when emailing the Capitol Police. In the case of the threat against former President Obama, the government expects the witness will testify that she took contemporaneous handwritten notes of the defendant's statements and identifying information, that she used the contemporaneous handwritten notes to draft the email she sent to the Capitol Police, that she is confident that the notes used to draft the email to Capitol Police were an accurate and verbatim reflection of the defendant's statements (although she did not capture everything he said), and that she was still excited from the event when she sent the email.[6]   The government expects that the staffer for Congresswoman Waters will testify similarly that she sent the email memorializing the defendant's threatening statement within 10 minutes of the defendant's call, also while still excited from the event, and that the email was accurate when written.

Several courts have admitted statements as either or both present sense impressions and

---

[6] The witness no longer has the original handwritten notes.

excited utterances where the statements are made at or near the time the conduct occurred and/or the evidence supports that the speaker was still in a state of excitement.   For example, in *United States v. Hawkins*, the Eighth Circuit held that a district court properly admitted statements from a 911 tape that were made seven minutes after an event as a present sense impression.   Likewise, statements made in 911 calls made two and 16 minutes after an event were properly admitted as present sense impressions and excited utterances.   *United States v. Mejia-Velez*, 855 F. Supp. 607, 614 (E.D.N.Y. 1994); *United States v. Steele*, 216 F. Supp. 317, 323 (S.D.N.Y. 2016).

If either witness who memorialized the defendant's statements in a contemporaneous email is unable to recall the statements well enough to testify accurately and fully at trial, the government may have the witnesses read from the email(s) pursuant to Federal Rule of Evidence 803(5) as recorded recollections.   Federal Rule of Evidence 803(5) provides that a witness may read a record into evidence if it: "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." The government expects that the staffers' emails will qualify to be read into evidence under Rule 803(5) if the witness cannot testify fully and accurately at trial because the emails were made by the witnesses when the matter was fresh in their memory and accurately reflect their knowledge at the time.

### D.    Business Records

The government intends to introduce telephone business records into evidence pursuant to Federal Rule of Evidence 803(6).   These records – for which the government also will seek a stipulation from the defense – are admissible once it is established by testimony or certification

that the records are authentic, that they were made at or near the time by (or from information transmitted by) someone with knowledge, that they were kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit, and that the making of the records was a regular practice of that activity. *See* Fed. R. Evid. 803(6)(D) & 902(11).   On March 3, 2019, the government provided written (email) notice, pursuant to Fed. R. Evid. 902(11) of its intention to admit these records as self-authenticating business records.

Utilizing the procedures of Rules 803(6) and 902(11) does not violate the Confrontation Clause "because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial."   *United States v. James*, 712 F.3d 79, 80 (2d Cir. 2013) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)).   "Because business records cannot be made in anticipation of litigation or include observations made by law enforcement personnel, they 'bear[] little resemblance to the civil-law abuses the Confrontation Clause targeted.'"   *United States v. Feliz*, 467 F.3d 227, 234 (2d Cir. 2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004)); *United States v. Mallory*, 461 F. App'x 352, 356 (4th Cir. 2012) (admission of certification of custodian of records for FedEx did not violate Confrontation Clause because "the Sixth Amendment right to confront witnesses does not include the right to confront a records custodian who submits a Rule 902(11) certification of a record that was created in the course of a regularly conducted business activity.").

### E.    Courtroom Security and the Defendant's Right to be Present at his Trial

A defendant has a right to be present at his own trial, but that right is not absolute.   *See Illinois v. Allen*, 397 U.S. 337, 338 (1970); *see also* Fed. R. Crim. P. 43(c) ("A defendant who was

initially present at trial . . . waives the right to be present . . . (A) when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial . . . [or] (C) when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom.").

As set forth in reports provided to the government by the United States Marshals Service, the defendant was extremely agitated when he was arrested and directed multiple racial slurs to members of the arrest team.   While in the federal building after being taken into custody, the defendant remained verbally abusive toward the United States Capitol Police.   In addition, the defendant told members of the Marshals Service that he knew how to find information about state officers on the internet and asked how he could find federal workers online.   He then stated to a Deputy Marshal that he would take the Marshal's gun and shoot him with it.   The defendant repeated that threat in court prior to his initial appearance (before Magistrate Judge Andrew T. Baxter took the bench).   Later, according to a report from the Marshals Service, the defendant also said the following to the transport officers tasked with taking him from Marshals Service custody to the Oneida County Jail – "do you have a gun?   You know if you have a gun I might take it and shoot you with it."

Based on the foregoing, as well as the defendant's history of making threatening and abusive statements both as charged and otherwise, the government believes it is appropriate for this Court to advise the defendant at the outset of trial that he cannot make threatening or abusive statements during the proceedings or otherwise act in a disruptive manner and that such behavior could lead to his removal from the courtroom where he would have to watch the proceedings via

17

closed-circuit television.   *See, e.g., United States v. Hellems*, 866 F.3d 856, 864-65 (8th Cir. 2017) (defendant forfeited his right to be present at trial where he "repeatedly interrupted and objected to every statement the district court made, all in full view of the jury" and "[h]is unruly conduct prevented the court from continuing the process of jury selection that had just begun" and district court warned the defendant that disruptions might cause his removal); *United States v. Rodriguez*, 523 F. App'x 962, 964 (4th Cir. 2013) (summary order) (not error to twice remove defendant from the courtroom when the defendant was warned beforehand yet had "angry outbursts"); *United States v. Williams*, 431 F.3d 1115 (8th Cir. 2005) (not error to remove defendant where "[t]he judge warned [the defendant] repeatedly about his disruptive behavior, giving him numerous opportunities to conduct himself properly.   When [the defendant] refused to cooperate, he was removed from the courtroom – the first time before voir dire – and stand-by counsel then represented him.   [The defendant] was also removed twice during voir dire, thereafter watching the proceedings on closed-circuit television.   [The defendant] returned at the close of voir dire, only to continue his barrage of objections, causing the judge to remove him again.").

## F.    Case Agents at Government's Counsel Table

The government has two primary case agents on this matter.   Special Agent Christopher Secondo, Department of Homeland Security, U.S. Secret Service, was the primary case agent with respect to the investigation of the defendant relating to the threats made in 2017 against former President Obama.   Special Agent Gerren Stith, United States Capitol Police, was the primary case agent with respect to the investigation of the defendant relating to the threats made in 2018 against Congresswoman Maxine Waters.   As a result, the government respectfully requests to have both

case agents sit at counsel table for the government during trial.   Multiple case agents may sit at counsel table under Federal Rule of Evidence 615(c), if this Court makes a finding of necessity. *See United States v. Jackson*, 60 F.3d 128, 135-36 (2d Cir. 1995).   This is particularly true where, as here, there would be little overlap between the testimony of Special Agents Secondo and Stith, given their respective involvement in the investigations that were separated by approximately one year.[7]

### G.   Other Act Evidence Under Federal Rule of Evidence 404(b)

Insofar as portions of the defendant's statements to law enforcement when he was interviewed could be considered "other acts," the government hereby provides this Court and the defense notice of its intent to introduce evidence of such "other acts" to prove motive, intent (*i.e.,* knowledge and intent as opposed to accident or mistake), and/or identity pursuant to Federal Rule of Evidence 404(b).   Such evidence includes the defendant's use of racial slurs and expletives during his interviews with law enforcement very similar in nature to the language used by the defendant in the threats against former President Obama and Congresswoman Waters.[8]   The

---

[7]  In the alternative, the government requests that this Court allow Special Agent Stith to remain as the government's case agent at counsel table throughout the trial and Special Agent Secondo to sit at counsel table after Special Agent Secondo's testimony (such that Special Agent Secondo would be sequestered until he testifies).

[8]  With the exception of the portion of the audio recordings that the government has proposed be redacted, the government believes that the defendant's statements when interviewed are part of its proof of the substantive crimes.   For example, the defendant's statements about his former interactions with law enforcement, and those interactions themselves, are substantively relevant and admissible because the defendant lied about them when confronted, underscoring his consciousness of guilt.   Likewise, his use of racially charged language is relevant to his motive in selecting his victims, which should be the subject of a special verdict form.   In an abundance of caution, however, the government is making a 404(b) notice through this Trial Memorandum because the defendant's statements also are admissible "other act" evidence to prove that the defendant was the person who made the threatening statements and that he did so intentionally.

government has also proposed jury instructions consistent with Rule 404(b) to prevent the jury from using any such evidence for an improper purpose.

## VI.   CONCLUSION

Through this trial memorandum the government has attempted to summarize those principles of law which we believe to be applicable in resolving issues that the Court may face during trial.   We respectfully request an opportunity to submit additional legal authority in connection with any contested issues describe above and regarding such other issues as may arise.

Dated:   March 4, 2019                                    Respectfully submitted,

                                                                        GRANT C. JAQUITH
                                                                        United States Attorney

                                                                        */s/Michael D. Gadarian*
                                                                        */s/Michael F. Perry*
                                                  By:     _____
                                                                        Michael D. Gadarian (Bar Roll No. 517198)
                                                                        Michael F. Perry (Bar Roll No. 518952)
                                                                        Assistant United States Attorneys