UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   -v-                                         CASE NO:  5:19-CR-0021 (GTS)

STEPHEN J. TAUBERT,
                      Defendant.

---

# SENTENCING MEMORANDUM OF DEFENDANT STEPHEN J. TAUBERT

DATED: April 22, 2019                        Respectfully submitted,

                                                                   LISA A. PEEBLES
                                                                   Federal Public Defender

                                         By:   Courtenay K. McKeon, Esq.
                                                   Assistant Federal Public Defender
                                                   Bar Roll No. 515841
                                                   Clinton Exchange, 3rd Floor
                                                   4 Clinton Square
                                                   Syracuse, New York   13202
                                                   (315) 701-0080

**I.      PRELIMINARY STATEMENT**

On March 20, 2019, a jury found defendant Stephen J. Taubert ("Mr. Taubert") guilty of (1) one count of influencing, impeding, or retaliating against a federal official in violation of 18 U.S.C. § 115(a)(1)(B); (2) one count of threat in interstate commerce in violation of 18 U.S.C. § 875(c); and (3) one count of threats against former presidents in violation of 18 U.S.C. § 879. (Dkt. No. 51.) As to each count, the jury found that Mr. Taubert "intentionally selected any victim as the object of the offense of conviction because of the[ir] actual or perceived race, color, or ethnicity." *Id*. Sentencing was expedited and is scheduled for April 30, 2019.

The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on April 17, 2019, in anticipation of sentencing.[1] (Dkt. No. 62.) The PSR sets forth a total offense level of 23 and a Criminal History Category of I. *Id*. ¶¶ 38, 51. The PSR states that the Guideline imprisonment range is 46 to 57 months. *Id*. ¶ 85.

Mr. Taubert submits this memorandum in support of his request for a below-Guideline sentence of time served followed by a period of home detention.

---

[1] Mr. Taubert has reviewed the PSR. An addendum to the PSR notes his factual objections. (Dkt. No. 62 at 22.)

## II.     THE 18 U.S.C. § 3553(a) FACTORS WEIGH IN FAVOR OF A BELOW-GUIDELINE SENTENCE.[2]

### A.     A Sentence of Time Served Followed by Home Detention Would Reflect the History and Characteristics of the Offender.

Under 18 U.S.C. § 3553(a)(1), this Court must consider the history and characteristics of the defendant. This factor weighs in favor of a below-Guideline sentence because of Mr. Taubert's extremely serious medical problems and his history of mental health issues.

As the PSR recounts, Mr. Taubert is in extremely poor health. (Dkt. No. 62 ¶¶ 67-70.) He suffered a thoracic aortic aneurysm without rupture, which required him to undergo a mechanical aortic valve replacement. *Id*. ¶ 69. He has a history of mini-stroke. *Id*. He experienced brain stem bleed in 2011. *Id*. He experienced a right subdural hematoma in 2014. *Id*. His medical records reflect nine separate active medical conditions: (1) incomplete paraplegia; (2) elevated prostate specific antigen; (3) long-term use of anticoagulant; (4) presence of prosthetic heart valve; (5) obesity; (6) cauda equina syndrome with neurogenic bladder; (7) epilepsy and epileptic syndromes with complex partial seizures; (8) neuromuscular dysfunction of the bladder; and (9) hypertension. *Id*. ¶ 70. Mr. Taubert's medical record from the VA Hospital is 4,174 pages long. As the Court was able to observe during the trial, this complex combination of medical conditions has resulted in Mr. Taubert appearing to be far older than his actual age of 61.

---

[2] After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the sentencing Guidelines are advisory rather than mandatory.  Therefore, in determining a sentence, a court must equally consider the Guideline calculations, the unique characteristics of the defendant, and the other statutory concerns listed in 18 U.S.C. § 3553(a), specifically: (1) The nature and circumstances of the offense and the history and characteristics of the defendant; and (2) The need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a).

A defendant's poor medical condition is an appropriate factor for the Court to rely upon when imposing a below-Guideline sentence. *See United States v. Alemenas*, 553 F.3d 27 (1st Cir. 2009) (downward variance based on defendant's chronic neck pain and mental health); *United States v. McFarlin* (8th Cir. 2008) (downward departure based on defendant's mental health and heart disease); *United States v. Weintraub*, 371 F. Supp. 2d 164, 167 (D. Conn. 2005) (sentencing court granted substantial downward departure based on defendant's poor health); *United States v. Jimenez*, 212 F. Supp. 2d 214 (S.D.N.Y. 2002) (downward departure where defendant suffered brain aneurism); *United States v. Kloda*, 133 F. Supp. 2d 345 (S.D.N.Y. 2001) (downward departure where defendant had health problems); *United States v. Hammond*, 37 F. Supp. 2d 204 (E.D.N.Y. 1999) (downward departure where defendant suffered from HIV); *United States v. Blarek*, 7 F. Supp. 2d 192 (E.D.N.Y. 1998) (downward departure based on defendant's health) *United States v. Gigante*, 989 F. Supp. 436 (E.D.N.Y. 1998) (downward departure where defendant suffered from heart condition).

Further, the link between Mr. Taubert's mental health issues and his calls to Senator Franken and Congresswoman Waters' offices weighs in favor of a below-Guideline sentence. As the PSR recounts, Mr. Taubert has a long history of mental illness. (Dkt. No. 62 ¶¶ 71-74.) He was institutionalized for two years as a teenager at Marcy State Hospital. *Id*. ¶ 71. He has received mental health treatment intermittently throughout his life. *Id*. ¶¶ 71-74. Diagnoses have varied from paranoid and schizoid personality disorder to adjustment disorder to anxiety disorder. *Id*. A defendant's history of mental illness is an appropriate reason to impose a below-Guideline sentence. *United States v. Ruklick*, 919 F.2d 95, 97, 99 (8th Cir. 1990) (downward departure justifiable when defendant suffered from longstanding schizophrenic affective disorder); *United States v. Philibert*, 947 F.2d 1467, 1471 (11th Cir. 1991) (downward departure warranted when defendant manifested symptoms of severe mental illness and placed severed

3

head of recently deceased horse on stairs of federal courthouse). Accordingly, this factor weighs in favor of the Court imposing a below-Guideline sentence of time served followed by a period of home detention.

**B.     A Below-Guideline Sentence Would Sufficiently Address the Nature and Circumstances of the Offense.**

Under 18 U.S.C. § 3553(a)(1), the Court is required to consider the nature and circumstances of the offense. Mr. Taubert acknowledges that his conduct was extremely serious. As is evident from the testimony of Ms. Walker at trial and the victim impact statements filed with the Court, Mr. Taubert's words had a devastating impact on his listeners. As many of the letters of support filed on his behalf acknowledge, Mr. Taubert frequently expresses himself in offensive ways, often for the purpose of provoking a response. In his calls to Senator Franken and Congresswoman Waters' offices, Mr. Taubert's words inevitably provoked a response of fear.

Despite his words, however, Mr. Taubert never intended to follow through with any physical harm to President Obama or Congresswoman Waters. Indeed, his physical condition would make it nearly impossible for him to do so. As indicated in many of the letters of support filed on his behalf, Mr. Taubert has always been all talk. No one in his family can imagine him ever physically harming another person. It is clear from the long delay between Mr. Taubert's phone calls and his arrest that the Secret Service and the Capitol Police agreed with the family's assessment that Mr. Taubert posed no physical threat.  Mr. Taubert called Senator Franken's office in June 2017. He was interviewed at his home a week later. He was not arrested. Mr. Taubert called Congresswoman Waters' office in July 2018. He was interviewed at his home approximately two weeks later. He was not arrested until January 2019, five months after the interview by the Capitol Police. This lack of any true physical threat to President Obama or

4

Congresswoman Waters distinguishes his case from other cases prosecuted under the same statutes. Accordingly, this factor weighs in favor of a below-Guideline sentence.

**C.     A Below-Guideline Sentence Would Avoid Unwarranted Sentencing Disparities Between Mr. Taubert and Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct.**

Under 18 U.S.C. § 3553(a)(6), this Court is required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This factor weighs in favor of a below-Guideline sentence because two defendants with similar records who have recently been found guilty of similar conduct received sentences far below the recommended Guideline sentence for Mr. Taubert.

As Congresswoman Waters notes in her victim impact statement, Mr. Taubert's phone call was a part of "an increase in threats, racist smears, and intimidation from across the country" that her office has experienced. (Dkt. No. 62 at 64.) Two of the incidents that Congresswoman Waters recounts in her letter are very similar to Mr. Taubert's phone calls.[3] In the first incident, a man named Anthony Scott Lloyd left a voicemail at Congresswoman Waters' office in which he stated "What you said at your little faggot conference, if you continue to make these threats towards the President, you're going to wind up dead, Maxine, because we will kill you . . . You can call the FBI, you can call the NSA, you can call whoever the fuck you want and report this . . . Bitch, do it again, you're dead. You're a fucking dead ass nigger." *Id*. In the second incident, a man named Richard Mel Phillips left a voicemail at Congresswoman Waters' office in which he stated, "there is nothing stopping me from killing your fucking ass" and that he would travel to her home state and "stick a bullet through your fucking skull." *Id*. The similarity of these two

---

[3]     The two other incidents to which Congresswoman Waters refers in her victim impact statement involved the planning of large-scale attacks on multiple victims by defendants armed with firearms and/or explosives.

incidents to Mr. Taubert's conduct makes them appropriate comparators when considering sentencing disparity.

Mr. Lloyd received a sentence of three years of probation, which included one year of home detention. *United States v. Lloyd*, Case No. 2:17-CR-0720 (C.D. Cal.), Dkt. No. 46. Like Mr. Taubert, Mr. Lloyd was classified as Criminal History Category I because he had no criminal history points. *Lloyd,* Dkt. No. 41, at 4. Like Mr. Taubert, Mr. Lloyd suffered from mental illness and had resided in an in-patient psychiatric facility as a teenager. *Id*. Like Mr. Taubert, Mr. Lloyd was a "voracious consumer of political news online, on television and on radio." *Id*. at 5. Like Mr. Taubert, Mr. Lloyd was inspired to call Congresswoman Waters based on the outrage of political commentators he followed. *Id*. at 5-6. Imposing a sentence of 46-57 months on Mr. Taubert when Mr. Lloyd received a sentence of probation would constitute an unwarranted sentencing disparity between defendants with similar records who have been found guilty of similar conduct.

Mr. Phillips received a sentence of eighteen months of imprisonment followed by three years of supervised release. *United States v. Phillips*, Case No. 5:18-CR-0043 (M.D. Fl.), Dkt. No. 41. Like Mr. Taubert, Mr. Phillips was classified as Criminal History Category I because he had no criminal history points. *Phillips*, Dkt. No. 39 at 2. Unlike Mr. Taubert, it does not appear that Mr. Phillips has a documented history of mental illness. *Id*. Like Mr. Taubert, he experienced an "unhealthy immersion in the vituperative political conflict in the news media." *Id*. Imposing a sentence of 46-57 months on Mr. Taubert when Mr. Phillips (who does not suffer from the mitigating factor of mental illness) received a sentence of 18 months would constitute an unwarranted sentencing disparity between defendants with similar records who have been found guilty of similar conduct. Accordingly, this factor weighs in favor of the Court imposing a below-Guideline sentence of time served followed by home detention.

**D.      A Below-Guideline Sentence Would Adequately Promote Respect for the Law, Provide Just Punishment, and Deter Criminal Conduct.**

A below-Guideline sentence would sufficiently deter criminal conduct by others. Studies of the deterrent effect of prison sentences have found that it is the prosecution of crime, rather than the sentence imposed, that has the strongest deterrent effect. In one of the best studies of specific deterrence, which involved federal white collar offenders in the pre-guideline era, no difference in deterrence was found between probation and imprisonment. Another study by the Institute of Criminology at Cambridge University examined the effects of changes to both the *certainty* and the *severity* of punishment. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *See* David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). Accordingly, these factors weigh in favor of the Court imposing a below-Guideline sentence of time served followed by a period of home detention.

### III.   CONCLUSION

For the reasons discussed above, the defense respectfully requests that the Court impose a below-Guideline sentence of time served followed by a period of home detention.

DATED: April 22, 2019

LISA A. PEEBLES
FEDERAL PUBLIC DEFENDER

By:   */s/ Courtenay K. McKeon, Esq.*
Assistant Federal Public Defender
Bar Roll No. 515841
Clinton Exchange, 3rd Floor
4 Clinton Street
Syracuse, New York   13202
(315) 701-0080

To:   Michael D. Gadarian, AUSA (via ECF)
Michael F. Perry, AUSA (via ECF)
Janna A. Kulakowski, SUSPO (via email)
Stephen J. Taubert (via hand delivery)